UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

    Plaintiff,

v.

D-1 Ezel Myron McElroy,
D-2 Maleek Ware-Thomas,
D-3 Samantha Mustafa,
D-4 Davonte Warren,
D-5 Ryan Slay,
D-6 Muhammad Khalid,
D-7 Langston Brooks,
D-8 Mark Hobson,
D-9 Raven Kelly,

    Defendants.
_____/

Case:2:21-cr-20424
Judge: Steeh, George Caram
MJ: Altman, Kimberly G.
Filed: 06-23-2021 At 11:04 AM
INDI USA V. SEALED MATTER (DA)

Violations:
18 U.S.C. § 1349
18 U.S.C. § 1344

## INDICTMENT

THE GRAND JURY CHARGES:

### COUNT ONE
### 18 U.S.C. §§ 1344, 1349 - Conspiracy to Commit Bank Fraud

D-1 Ezel Myron McElroy
D-2 Maleek Ware-Thomas
D-3 Samantha Mustafa
D-4 Davonte Warren
D-5 Ryan Slay
D-6 Muhammad Khalid
D-7 Langston Brooks
D-8 Mark Hobson
D-9 Raven Kelly

1

1.  From on or about January 1, 2018, to on or about March 30, 2020, in the Eastern District of Michigan, and elsewhere, defendants, Ezel Myron MCELROY, Maleek WARE-THOMAS, Samantha MUSTAFA, Davonte WARREN, Ryan SLAY, Muhammad KHALID, Langston BROOKS, Mark HOBSON, and Raven KELLY, knowingly and intentionally conspired and agreed with each other and with other individuals, both known and unknown to the Grand Jury, to knowingly execute a scheme to defraud, and to obtain by means of false or fraudulent pretenses or representations money or funds under the custody or control of, financial institutions, including Comerica Bank, Fifth Third Bank, Huntington National Bank, Bank of America, TCF Bank, JP Morgan Chase Bank, and PNC Bank, as well other financial institutions (as defined by Title 18, Section 20 of the United States Code).

**The Scheme to Defraud**

2.  As part of the scheme to defraud, members of the conspiracy manufactured counterfeit checks, often in the name of a real business or organization as the payor. One or more members of the conspiracy would solicit individuals with a bank account to provide their bank account information and access to their bank account. Thereafter, a member of the conspiracy would deposit one or more counterfeit checks into the bank account. At times, a member of the

2

conspiracy would provide a counterfeit check to the bank account holder to deposit into his or her own account. Soon after one or more counterfeit checks were deposited into an account, a member of the conspiracy would withdraw funds from the account or would solicit another person to withdraw funds from the account.

## Object of the Conspiracy

3. The object of the conspiracy was to obtain money from financial institutions by fraudulently depositing counterfeit checks into accounts held at the financial institutions and withdrawing or transferring funds from the accounts shortly thereafter.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that members of the conspiracy, and others known to the grand jury, made or assisted making counterfeit checks to deposit into the accounts of third parties held at financial institutions.

5. It was part of the conspiracy that members of the conspiracy, and others known and unknown to the grand jury, solicited bank account holders to provide their financial institution account information and provide access to their bank account in order for members of the conspiracy to manufacture counterfeit checks and to deposit counterfeit checks into accounts at financial institutions.

6. It was part of the conspiracy that members of the conspiracy shared financial account information with each other to facilitate making counterfeit checks, depositing counterfeit checks into accounts, and accessing accounts.

7. It was part of the conspiracy that members of the conspiracy, and others known and unknown to the grand jury, deposited counterfeit checks into the accounts of third parties at financial institutions, or their own accounts at financial institutions, with the intent of withdrawing funds from the accounts.

8. It was part of the conspiracy that members of the conspiracy, gave counterfeit checks to other members of the conspiracy, as well as non-members of the conspiracy, to deposit into accounts held at the financial institutions.

9. It was part of the conspiracy that following deposit of a counterfeit check or checks into an account at a financial institution, members of the conspiracy, as well as others known and unknown to the grand jury, would withdraw funds from the account, solicit others to withdraw funds from the account, or otherwise access the account.

10. It was further part of the conspiracy that Ezel MCELROY committed acts in furtherance of the scheme to defraud, including manufacturing counterfeit checks, soliciting bank account holders, depositing counterfeit checks, withdrawing funds from bank accounts into which counterfeit checks had been

deposited, and communicating with co-conspirators in furtherance of the scheme, on or after February 10, 2018.

All in violation of Title 18, United States Code, Sections 1344, 1349.

## FORFEITURE ALLEGATION

11. Pursuant to Fed. R. Cr. P. 32.2(a), the government hereby provides notice to the defendants of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set for in this Indictment.

12. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of Defendants:

   a. Cannot be located upon the exercise of due diligence;

   b. Has been transferred or sold to, or deposited with, a third party;

   c. Has been placed beyond the jurisdiction of the Court;

   d. Has been substantially diminished in value; or

   e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

THIS IS A TRUE BILL.

*s/ Grand Jury Foreperson*
GRAND JURY FOREPERSON

SAIMA S. MOHSIN
Acting United States Attorney

JOHN K. NEAL
Chief, White Collar Crime Unit

s/*Mark Chasteen*
MARK CHASTEEN
Assistant United States Attorney

Dated: June 23, 2021

6

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover** | Case: 2:21-cr-20424<br>Judge: Steeh, George Caram<br>MJ: Altman, Kimberly G.<br>Filed: 06-23-2021 At 11:04 AM<br>INDI USA V. SEALED MATTER (DA) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

### Companion Case Information

**Companion Case Number:**

This may be a companion case based upon LCrR 57.10 (b)(4)[1]:

☐ Yes  ☒ No

**Judge Assigned:**

**AUSA's Initials:** _MC_

**Case Title:** USA v. Ezel Myron McElroy, et al

**County where offense occurred:** Oakland

**Check One:** ☒ Felony  ☐ Misdemeanor  ☐ Petty

____Indictment/____Information --- **no** prior complaint.
_✓_Indictment/____Information --- based upon prior complaint [Case number: 21-mj-30139 ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

### Superseding Case Information

**Superseding to Case No:** _____  **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

June 23, 2021
Date

Mark Chasteen
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9555
Fax: 313-226-2873
E-Mail address: Mark.Chasteen@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.